Counsel who expect to give argument this morning are present. The Court will hear the first three cases for argument and then recess and reconvene at 11 for, with a reconstituted panel. Before we begin the arguments, I want to make a semi-personal statement. I have announced that I will take senior status at the end of this year. I have spent 30 wonderful and not-so-wonderful years on this Court, more than 30, including a period when we joined the homeless of San Francisco on the streets after the 1989 earthquake. I have treasured my associations with the Bar and with my colleagues, and I'm very pleased to be here with Judge O'Scanlan and Judge Furzon this morning. And so this will be the last time that I preside over an argument in this magnificent building. And I want to say, express what a joy it is to sit in this building, in the most beautiful courtroom, in the most beautiful courthouse in America, which would be Justice Douglas' words. And so I will conclude by saying that because this is my last day to preside in this – over this Court, I expect the arguments to be super-duper good. Okay. We will now hear the cases in the order that they are listed. First case for argument is United States v. Tubbs. Good morning, Your Honors. Tim Werner for the appellant, Mr. Tubbs. In this case, the only – the only challenge we are making is to the 924C count. It is not to the armed bank robbery count. And as to that count, there is insufficient evidence that Mr. Tubbs possessed an actual firearm, as is required by 924C. The only witness saying that Mr. Tubbs had a gun did not describe what she – if anything, she observed in Mr. Tubbs' hand. But is that necessary? She said he had a gun. And isn't that enough to get to the jury? And then the jury will have to decide, subject to argument of counsel on both sides, yes, he did, no, she didn't, no, he didn't. I think, Your Honor, that it is enough for the armed bank robbery, but not for the 924C, which has the additional element of it actually having to be a firearm capable of expelling a projectile, a real firearm, as opposed to a toy or a replica. The person who said he had a gun say he had a real gun? She said – she just said they all had guns, I'm sure of it. All right. But isn't the real problem, then, the adding and abetting issue? Yes, Your Honor. First, as to whether it's properly raised, because I gather it was somewhat disavowed in the district court or disavowed in the district court. Right. Second of all, what the evidence is. Right. Trial counsel did not make that argument in the district court, but I did cite in my brief where the court actually, on its own, it seems, considered that argument and said that it would be covered by adding and abetting. So in my view, we have enough certainly to get to the court, certainly under the plain error standard, and the cases seem to suggest that essentially this court will apply the sufficiency of evidence test that's been articulated. But on the issue of aiding and abetting, what the facts show is that the first two robbers to enter were Blanche and Bradley. Mr. Tubbs was the third robber to enter. The court has been provided the exhibits, and I think the exhibits speak as to how this happened and to Mr. Tubbs. Would you help us by identifying which exhibits you rely on? I will, Your Honor. There are quite a few here. Yeah. I would point the court initially to People's Exhibit 20C, which shows Blanche and Bradley outside of the bank, and that's at 552.58 p.m. It's time stamped in the upper right-hand corner. The next ---- Well, what are we to make of that exhibit? That is Mr. Blanche and Mr. Bradley entering the bank. That was an exhibit identified by Ms. Mayoki. You could see the maroon cap of Mr. Bradley to the right. You could see the shoes, which are not the tan shoes that Mr. Tubbs wore, the stocky heavyset individual to the left, which would be Ms. Mayoki. Okay. But I'm having trouble understanding. What's the connection to 924C? I'll get to that. What I'm showing is that these exhibits show a sequence of events that show that Tubbs was not assisting the first two who had purportedly had firearms. Who was wearing the maroon hood? That was Mr. Bradley. The second exhibit I would point the Court to would be Exhibit 20I, which then shows Mr. Blanche on the right, Mr. Bradley on the left. They've now entered the bank. They're holding their hands out. Mr. Tubbs is not there yet. Then I would direct the Court to the Exhibit 20J, which is time-stamped 55302, and that is Mr. Tubbs. You could see his tan shoes. There's no dispute that the tan-shoed gentleman was Mr. Tubbs. Right there, that shows that at least four-second interval between when the first two entered and Mr. Tubbs is still outside the bank at that point. Then I would direct the Court to Exhibit 20JJ, which in this exhibit you could see Mr. Tubbs just having entered the bank. The other two robbers are towards the far end. And then 20HH would be the next sequence showing Mr. Tubbs starting to jump over and the other two robbers even deeper into the bank. And what I think this shows is that Tubbs was not – Tubbs did not assist their entry. Tubbs did not assist in gaining control upon entry. And I believe that that is supported by the witnesses as well, who state that the first two robbers were the ones shouting the commands. Well, the crime is aiding and abetting the use of a firearm during the commission of the bank robbery. Is that correct? That's correct. And as I understand from the pictures and from what you're saying, two men were carrying guns. They went in first. Your client went in last. He was or was not carrying a gun. There is evidence that he was. The pictures, you can't see it. He jumps over and actually starts stuffing the money after they tell everybody to get down by using the threat of the gun, clearly. You don't dispute any of that. You say that the – They told everybody to get down using the gun. That's true. That was a threat of violence. Right. He comes in, jumps over the counter, and starts taking the money. Right. Right. And that's not aiding and abetting the use of a firearm in the commission of the robbery, which is because it's the firearm enabled him to go out and get the money. The case that I cited, it's the Bankilare case, which is the one that establishes that there has to be a direct facilitation of the firearm use. And that case specifically says it is not merely aiding and abetting a bank robbery, but directly facilitating the firearm use. So I think following that case, and I've also cited the Nelson case where there was coordination between the armed gentleman and the unarmed person, that because of the separation between those two, that this is not aiding and abetting the use of the firearm. I acknowledge aiding and abetting the commission of a bank robbery, but not following Nelson and following Bankilare, there is not that direct facilitation. Kagan. And it's a very fine-cut problem, because presumably, or at least somebody could conclude, that if the other two didn't have a gun and hadn't gotten control over the situation, then Tubbs couldn't have jumped over the counter and just gotten the money. There had to be some way to get it. So he took at least took advantage of the gun, and the question is, is that sufficient? Houskudds. Correct. I think what we could understand from the Nelson case, which did a bit more analysis of this issue, that case, there were two examples that they cited where there was aiding and abetting. In one of them, the person who was going to have the gun switched with another person, and those two acted in coordination as they went in. The unarmed person sort of helped the other person get in. Yes, but the – if you're – if the pictures don't lie, the other two were in there and your client went in and then robbed the bank. So that looks like the inference can be drawn that this was planned. It was a planned bank robbery. As to aiding and abetting. And then the use of the guns wasn't planned, too? There is no evidence that how the use of the guns was planned. There was no evidence presented. I understand. There was no meeting. Right. Just looking at the pictures of how they conducted the crime. If you want to save some time for it. Okay. Yeah, I will. Thank you. Thank you. You have a little over a minute. Good morning, Your Honor. As it may please the Court, Todd Pickles on behalf of the United States. Judge O'Scanlan, in response to your first question about whether or not the description of the gun was required, or more description of the gun was required for Ms. Mayoke than was provided, I believe the answer is no. It goes to the weight of the evidence, but whether or not the jury should have been able to consider it, and a rational jury could have returned a verdict finding that Mr. Tubbs had a gun. Ms. Mayoke testified she was certain she saw a gun by the third robber, that's Mr. Tubbs, and was asked. It was her real gun? She did not, Your Honor. She just described – actually, the question was, did you see a firearm? And she said yes. And then the follow-up question was, were you certain or do you have any doubt? And she said she was 100 percent certain. But there was no specific testimony as to whether it was a real weapon or a toy or replica. But based on the – And there's all these photos, and although you can see something that could have been a gun in the other two guys' hands, you can't see anything in his hand. I agree, Your Honor. The photographic evidence is ambivalent or it doesn't – It's more than ambivalent. It's not – I mean, it's one point you see his two hands working on the money and there's no gun. Correct, Your Honor. And I don't think that the testimony or the argument has ever been that Mr. Tubbs possessed and brandished a weapon the entire time. In fact, at some point, he was the bag man, the one that grabbed the money. And I think that goes to the aiding and abetting issue. And on that, I think, Judge Berzon, you've addressed, that's kind of – there's the second problem there with respect to Mr. Tubbs' argument on aiding and abetting. With respect to this Court's case level, the Nelson case, we've also cited this Ungerford case in all the visits. How do you aid and abet the use of a gun if you don't plan for the gun, because we have no evidence of that, except maybe he could infer it. I don't know. Maybe – that's one possibility is inferring that. But other than that, is taking – I mean, it seems to me, as I said, that he took advantage of the fact that the other guys were using the gun, because how else was he going to be able to carry this out? Is that aiding and abetting the use of the gun, or is it simply, you know, taking advantage of the use of the gun? Is that the same thing? Well, I think in this case, given the facts, it's more than just he kind of followed along, noticed that the bank, all of the tellers and everyone was complying with the other two defendants' instructions, and therefore took advantage of this situation. He's integral to the bank robbery. If you accept the argument that Mr. Tubbs is making that he didn't have a gun, that his role was the bag man, I'm going to grab the money. So you're essentially saying you have to infer that it was all planned. That's really what you're saying. Correct, Your Honor. And I think the evidence supports that insofar as you have Mr. Tubbs picking this particular location. He's the one that directs Ms. Brewer, his girlfriend, who's driving the car, to this location. They've already, prior to this, made arrangements to purchase the clothing they're going to wear to the bank robbery. So they're all in the car together? They're in the car together from sometime in the morning to 5.50 that evening. And at one point he says, I need to get a gun, which I suppose you could take to mean because I don't have one because the other guys do or something like that. I think that's right. And I think that actually cuts in favor of the argument for aiding and abetting. He knows that the other his accomplices have weapons. He wants to have one. There's no evidence that this toy gun that was later found with the orange tip was actually displayed at any point. So he takes the money, and the money has an exploding dye pack. And they leave in a cloud of smoke and all get into the same car? Correct, Your Honor. They get in the same car. They return to the house that Mr. Tubbs is living. He's the one that washes the money and divvies it up. I think these facts are even stronger than in the Hungerford case where a Section 924C conviction was affirmed. And I think they're actually supported by the Nelson case, relied on by Mr. Tubbs, because there's evidence that Mr. Tubbs was giving instructions at the location. And that's fairly flimsy, too. What is that evidence? Your Honor, three different witnesses testified to seeing the three. Yeah. And they just said they. They never really said who, did they? Correct, Your Honor. Again, there are three defendants, not as if there's a room of 100, and therefore. There could have been two of them. I mean, that just seems – nobody said. Did anybody say Tubbs gave directions? No. They didn't identify actually any of the particular defendants who gave the instructions. They simply referred to the plural they. But given the – assuming we're going to even apply the sufficiency of evidence standard, all reasonable inferences should be drawn in favor of the United States. But in fact, the photos seem to show that the instructions were given before Tubbs actually got in there, because they – or at least was – the other two went in there with the guns and gave directions, and people got down and so on, and then Tubbs comes in and takes the money. The photographs definitely show that Mr. Blanch and Mr. Bradley entered first, and Mr. Tubbs followed shortly behind. But the oral testimony by the witnesses, and I believe it's Ms. Ignacio and Ms. Luo, both testified that they saw three enter and that then there were shouts of get down, we're going to kill somebody. So the instructions, at least based on the testimony of the victim witnesses, indicated that the instructions were after all three were present. Is there any significance to Mr. Tubbs' admission that he participated in the robbery? Well, I think there's – I think that's two points, Your Honor. One, I think that just further emphasizes the point that Mr. Tubbs was aware of this and based on his admission, knowing that there's going to be an armed robbery. The issue then becomes the knowledge of the weapon, and we've addressed it in the papers. The second point, I think, Your Honor, it goes to this idea of whether or not somehow when Mr. Tubbs never responded to the aiding and abetting argument and also conceded that point to the district judge, there could have been no strategic benefit to somehow remaining silent on aiding and abetting, having already conceded that he's – was a participant in the armed robbery. You're not saying it's a division on the aiding and abetting element? No, Your Honor. I believe – and I don't think there's any dispute with Mr. Tubbs with respect that there are additional elements and proof required for a section 924C charge as opposed to simply aiding and abetting an armed robbery. Unless the Court has any further questions, I'll submit. There don't appear to be any. Thank you. Thank you. Mr. Warren. Thank you. In terms of the issue of the robbers yelling, Ms. Heilman stated that one robber yelled. Mr. Bielucki stated that it was the first two robbers that yelled. Ms. Miyoki was very clear that there were two robbers that entered first and then the other gentleman came in after that. And I don't think you could isolate testimony without looking at everything, including the for a rational juror to conclude that. So I don't think we could just isolate statements. And I think clearly the picture that a rational juror would get is that the first two came in, and Tubbs came in after that with the bag. The pictures show him just jumping behind the – But the problem with your theory is that somebody would have to believe that Tubbs planned this robbery with them, because he did plan it, but didn't concern himself about whether they had guns, didn't know they had guns, and didn't know how they were going to get control over the people before he came in. I think that as to that issue, I think that, again, the distinction between planning an armed bank robbery as opposed to planning the use of a 924-C. Armed – the crime of armed bank robbery can be committed with toys or replicas. There was no evidence that – But in fact, it wasn't. So the question is, could the jury infer from the fact that it was – or at least the evidence seems to support that it wasn't. And so you would have to think that they never talked about whether they were going to have a real gun or a toy gun, even though they, in fact, had real guns. There was testimony from – I think her name was Angel Brewer, the young lady that was there. Basically, this tracked their whole day leading up to that point. There was no testimony about planning, no testimony about discussion about real guns as opposed to replicas. For example, they went out and got clothes to do it with, so there was something – some kind of organized planning going on. There was organized planning, but I disagree as to whether there's sufficient evidence of planning the use of an actual firearm, because Tubbs actually got a toy gun, and I think that cuts against it. I don't think we could – we could say that we could infer planning to use actual firearms as opposed to just planning a robbery. I think we understand your position on that. Thank you. Your time has expired. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Enby Industries v. Wells Fargo.
judges: Schroeder, O'scannlain, Berzon